**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tammy Lynn Rowan, | No. CV-18-02530-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Tammy Lynn Rowan's Application for Disability Insurance Benefits ("DIB") by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 19, Pl. Br.), Defendant SSA Commissioner's Opposition (Doc. 25, Def. Br.), and Plaintiff's Reply (Doc. 33, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 11, R.) and now reverses the Administrative Law Judge's decision (R. at 1441.)

**I.     BACKGROUND**

This case has a lengthy procedural background that involves two separate applications for DIB for the same period of disability. The Court has reviewed the facts and evidence in their entirety and finds it unnecessary to provide a complete summary here. Accordingly, only pertinent information will be discussed.

### A. First Application

On January 11, 1999, Plaintiff filed an application for DIB, alleging a period of disability beginning March 30, 1991 (R. at 1592–93.) Following a hearing, Administrative Law Judge ("ALJ") Ronald Robins issued a decision in September 2000 denying Plaintiff's claim. (R. at 1589–98.) ALJ Robins determined that Plaintiff had the following severe impairments: "hypertension, headaches, obesity, periodic depression associated with general medical condition, and generalized anxiety." (R. at 1597.) Later in his analysis, ALJ Robins concluded that because Plaintiff had the residual functional capacity to perform her past relevant work, she was not disabled under the Act. (R. at 1598.) This decision became final after the Appeals Council denied Plaintiff's request for review and Plaintiff did not seek judicial review. (R. at 101.)

### B. Current Application

On September 11, 2006, Plaintiff filed a new application for DIB, alleging a period of disability beginning on March 31, 1991. (R. at 101.) The parties do not dispute that Plaintiff's date last insured ("DLI") was June 30, 1995. (Pl. Br. at 10, Def. Br. at 8.) On February 6, 2009, Plaintiff attended a hearing held before ALJ Larry Johnson. (R. 45–64.) ALJ Johnson was unaware of the file from Plaintiff's previous application, and therefore decided to postpone the hearing. (R. at 45–64.) Without holding a hearing or considering all of Plaintiff's evidence, ALJ Johnson denied Plaintiff's claim initially on March 26, 2009 (R. at 88), and upon reconsideration on July 10, 2009. (R. at 98.) On December 9, 2009, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the matter for further proceedings. (R. at 108–10.)

On November 10, 2010, Plaintiff testified at a hearing held before ALJ James Seiler. (R. at 65–85.) On May 19, 2011, ALJ Seiler issued a decision denying Plaintiff's application. (R. at 1511–24.) ALJ Seiler determined that Plaintiff had the following severe impairments: "hypertension, headaches, obesity, status post back surgery, and depression." (R. at 1518.) ALJ Seiler further determined that although the record confirmed that Plaintiff was diagnosed with fibromyalgia in 2001, there was no evidence confirming its existence

prior to Plaintiff's DLI. (R. at 1518.) The Appeals Council denied Plaintiff's request for review (R. at 1–3), and the District Court affirmed ALJ Seiler's decision. (R. at 1568–84.)

On June 15, 2016, the Ninth Circuit reversed the judgment of the District Court and remanded with instructions to conduct a new hearing on Plaintiff's disability claim and to consider the record from Plaintiff's current and prior applications. (R. at 1818–22.) The Ninth Circuit agreed with ALJ Seiler that new evidence regarding a claimant's impairments after the DLI can be relevant to an evaluation of those impairments prior to the DLI. (R. at 1821.) But the Ninth Circuit concluded that ALJ Seiler erred by not also considering evidence from Plaintiff's previous record when evaluating the merits of Plaintiff's current claim. (R. at 1821.) The Ninth Circuit specifically ordered the SSA to conduct a new hearing on Plaintiff's current claim and to consider evidence from both of Plaintiff's applications in making a decision. (R. at 1822.) The District Court and Appeals Council remanded Plaintiff's claim in accordance with the Ninth Circuit's Order. (R. at 1554–55, 1585–88.)

On April 10, 2017, Plaintiff testified at a hearing held before ALJ Patricia Bucci. (R. at 1486–1510.) ALJ Bucci issued a decision on October 23, 2017, denying Plaintiff's application. (R. at 1441–55.) Specifically, the ALJ determined that Plaintiff did not have any severe impairments. (R. at 1451.)

ALJ Bucci began her analysis by evaluating the procedural posture of Plaintiff's current claim. First, the ALJ found that Plaintiff was prohibited from requesting a reopening and revision of the September 2000 decision because Plaintiff's request was untimely. (R. at 1445.) Plaintiff argues in her Opening Brief, and the Court agrees, that Plaintiff was not seeking to reopen her previous claim. (Pl. Br. at 4.) Instead, Plaintiff argues that she has new and material evidence that permits her to relitigate her previously adjudicated period of disability. (Pl. Br. at 4–5.) ALJ Bucci then evaluated the applicability of the presumption of continuing non-disability and the doctrine of *res judicata* to

Plaintiff's claim.[1] (R. at 1445–46.) The ALJ determined that only the latter was applicable in this context, but that Plaintiff's claim was not precluded because of changes to the SSA Regulations since the September 2000 decision.[2] (R. at 1446.)

ALJ Bucci then substantively evaluated Plaintiff's claim. She determined that Plaintiff's "hypertension, headaches, obesity, depression, and generalized anxiety" were medically determinable impairments, though non-severe, contrary to ALJ Robins's decision in 2000. (R. at 1449, 1551.) ALJ Bucci evaluated some of Plaintiff's newly submitted evidence of these five impairments and determined it "would not change the decision of nondisability made by Judge Robins." (R. at 1149, 1451.) With regard to Plaintiff's alleged fibromyalgia and vertebrogenic disorder, ALJ Bucci determined that neither was a medically determinable impairment. (R. at 1449.) Specifically, the ALJ found that Plaintiff's 2001 diagnosis of fibromyalgia was irrelevant to her current application, and there was no evidence to support a diagnosis of vertebrogenic disorder prior to Plaintiff's DLI. (R. at 1449.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider

---

[1] ALJ Bucci looked to *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988) to evaluate the presumption of continuing non-disability. (R. at 4–5.) The Court interprets *Chavez* in the context of Plaintiff's later arguments and therefore discusses it in turn.

[2] ALJ Bucci specifically noted changes to the regulations regarding obesity and mental impairments. (R. at 1446.) Plaintiff argues that "[t]he ALJ's narrow application of the new and material rules prejudiced Rowan" because "the ALJ's identification of policy changes was incomplete" as it did not include the new regulations pertaining to fibromyalgia. (Pl. Br. at 7.)

the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

**III.    ANALYSIS**

Plaintiff raises two primary arguments on appeal: (1) the ALJ erred by determining that Plaintiff had no severe impairments; and (2) the ALJ erred by concluding that

Plaintiff's fibromyalgia and vertebrogenic disorder were not medically determinable impairments. (Pl. Br. at 7–14.)

### A. The ALJ erred by finding that Plaintiff had no severe impairments.

Plaintiff disputes the ALJ's findings at step two of the five-step process. Specifically, Plaintiff challenges ALJ Bucci's conclusion that Plaintiff had no severe impairments despite previous ALJs finding that Plaintiff had several severe impairments. (Pl. Br. at 8–9.) Plaintiff argues that ALJ Bucci committed various procedural errors. (Pl. Br. at 4–7.) The Court finds that issue preclusion is dispositive[3] and thus does not address Plaintiff's remaining arguments.[4]

The parties and ALJ Bucci dispute the meaning and applicability of *Chavez*. *Chavez* stands for the proposition that a claimant may relitigate a previously adjudicated period of disability if there is new and material evidence or a change in circumstances indicating greater disability. *Chavez*, 844 F.2d at 693. Despite the possibility of relitigation, *Chavez* provides that some previously decided issues may be precluded from reconsideration in subsequent proceedings. *Id.* at 694. Issues are barred from reconsideration unless new and material evidence or a change in circumstances contradict the previous ALJ's findings. *Id.* ("Principles of *res judicata* made binding the first judge's determinations that the claimant had a residual functional capacity of light work, was of limited education, and was skilled or semi-skilled.").

---

[3] The parties and ALJ use the term "*res judicata*" imprecisely to encompass both issue and claim preclusion.

[4] Plaintiff argues the ALJ erred in concluding that Plaintiff was seeking to reopen her previous claim for disability and that this error was prejudicial to Plaintiff. (Pl. Br. at 4–5.) The Court finds that ALJ Bucci was incorrect in assuming that Plaintiff was seeking to reopen her previous claim, but any error was harmless. Plaintiff also argues that the law of the case doctrine is applicable to her claim and binds ALJ Bucci to previous findings by the District Court and Ninth Circuit. (Pl. Br. at 8–9.) The Court will not analyze the law of the case doctrine, as stated above, but notes that Plaintiff's argument is tenuous given the Ninth Circuit's Order vacating the previous hearing in its entirety. Finally, Plaintiff argues that ALJ Bucci erred by concluding that *Chavez* does not apply to Plaintiff's claim. (Pl. Br. at 5–6.) Plaintiff relies on *Chavez* to argue that ALJ Robins's step two finding is entitled to preclusive effect "[a]bsent new and material evidence of significant improvement." (Pl. Br. at 8.) Because *Chavez* concerns both issue and claim preclusion, the Court further evaluates Plaintiff's arguments regarding *Chavez* within its issue preclusion analysis.

With regard to Plaintiff's current Application, ALJ Bucci concluded "[t]here is insufficient evidence of a severe impairment prior to the date last insured when considering the evidence submitted through 2000." (R. at 1451.) This finding contradicts ALJ Robins's 2000 decision that Plaintiff suffered from five severe impairments, namely "hypertension, headaches, obesity, periodic depression associated with general medical condition, and generalized anxiety." (R. at 1597.) ALJ Bucci was only allowed to reconsider step two if she determined that new and material evidence or a change in circumstances contradicted ALJ Robins's previous step two determination. Therefore, the only issue is whether ALJ Bucci could reevaluate the severity of Plaintiff's impairments.

Based on ALJ Bucci's conclusions regarding Plaintiff's newly submitted evidence, ALJ Bucci was precluded from reevaluating the severity of Plaintiff's obesity, depression, and anxiety. Regarding Plaintiff's obesity, ALJ Bucci found that Plaintiff's "newly submitted evidence indicates claimant is obese" and there has been no "change in [Plaintiff's] weight or ability to function." (R. at 1451.) Because ALJ Bucci concluded that Plaintiff's obesity has not changed since her DLI, ALJ Robins's finding of severity holds true, and ALJ Bucci was precluded from reconsidering the severity of Plaintiff's obesity.

ALJ Bucci evaluated Plaintiff's new evidence pertaining to her depression and anxiety—treatment notes from 2006–2017—and declined to give the notes weight because they could not be backdated to before Plaintiff's DLI.[5] (R. at 1452.) Because ALJ Bucci did not consider any relevant new evidence pertaining to Plaintiff's mental impairments, that step two finding was undisturbed. Consequently, the ALJ was barred from reconsidering their severity, and ALJ Robins's finding of severity stands.

Conversely, ALJ Bucci was not precluded from reconsidering Plaintiff's hypertension and headaches. The ALJ analyzed at least some of Plaintiff's newly submitted medical records and found evidence of improvement. (R. at 1451.) Specifically, the

---

[5] Although ALJ Bucci analyzes at least some of Plaintiff's newly submitted evidence, she frequently states that she is unable to evaluate any evidence created outside of Plaintiff's period of disability. (R. at 1449, 1451–53.) Notably, medical evaluations or diagnoses made after the period of disability "are relevant to an evaluation of the pre-expiration condition." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988).

- 7 -

ALJ considered a medical record dated December 11, 2000, in which Plaintiff appears to have denied chest pain, shortness of breath, and peripheral edema. (R. at 832, 1451.) The ALJ also considered records that indicate that medicine was working well for Plaintiff's migraines. (R. at 832, 1451.) The Court does not make findings regarding the materiality of Plaintiff's newly submitted evidence but notes that it seems to contradict ALJ Robins's finding that Plaintiff's headaches and hypertension were severe. Therefore, ALJ Bucci was not precluded from making a new severity determination with respect to these two impairments.

Regardless of ALJ Bucci's determination that Plaintiff's hypertension and headaches were non-severe, ALJ Bucci erred in denying Plaintiff's claim at step two because the severity requirement was already met. *Smolen v. Chater*, 80 F.3d 1273, 1289–90 (9th Cir. 1996) (finding that a claimant can survive step two by establishing at least one severe impairment).

ALJ Bucci erred by not giving preclusive effect to ALJ Robins's findings at step two and thereby prematurely ending her evaluation of Plaintiff's claim. ALJ Bucci may have properly determined that Plaintiff's hypertension and headaches were non-severe. However, she necessarily erred by ending her analysis at step two and failing to consider all of Plaintiff's medically determinable impairments—severe and non-severe—in combination to determine Plaintiff's capacity to work.

**B. The ALJ erred by concluding that Plaintiff's fibromyalgia and vertebrogenic disorder were not medically determinable impairments.**

At step two of the disability analysis, ALJ Bucci concluded that Plaintiff's fibromyalgia and vertebrogenic disorder were not medically determinable impairments prior to the DLI. (R. at 1449.) Plaintiff argues the ALJ erred by disregarding Plaintiff's evidence of these impairments. (Pl. Br. at 10–14.) Defendant argues that ALJ Bucci properly determined that Plaintiff had no severe impairments during the period of disability and that any procedural errors were harmless. (Def. Br. at 9–14.)

### 1. Plaintiff's fibromyalgia is a medically determinable impairment.

Without evaluating Plaintiff's evidence, ALJ Bucci determined that Plaintiff's fibromyalgia was not a medically determinable impairment. (R. at 1449.) ALJ Bucci noted that ALJ Robins had already considered Plaintiff's evidence of fibromyalgia, and therefore ALJ Bucci was precluded from reevaluating it without new and material evidence. (R. at 1449.) Plaintiff argues that 1) her 2001 diagnosis of fibromyalgia, and 2) new SSA rulings and regulations pertaining to fibromyalgia are the type of new and material evidence or change in circumstances that *Chavez* contemplates. (Pl. Br. at 12–14.) The Court agrees.

An increase in the severity of an impairment or the existence of an impairment not considered in a claimant's previous application prevents an ALJ from applying preclusion principles to avoid reconsidering a claimant's disability. *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995); *Chavez*, 844 F.2d at 693. Plaintiff has provided evidence of both.

In 2001, Dr. Ravi Bhalla diagnosed Plaintiff with fibromyalgia after reviewing Plaintiff's medical history and conducting a physical exam. (R. at 589.) ALJ Bucci is correct that Dr. Michael A. Steingard noted in November 1999 that Plaintiff had "fibromyalgic type complaints." (R. at 1449.) However, Plaintiff was not formally diagnosed with fibromyalgia until 2001. This change in Plaintiff's medical records demonstrates an increase in the severity of her fibromyalgia such that claim preclusion would not apply. Further, there is no indication in ALJ Robins's decision that he considered Plaintiff's fibromyalgia.

In 2012, the SSA began "recognizing fibromyalgia as a 'valid basis for a finding of disability'" and identified new ways to evaluate it. *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (quoting SSR 12-2p, at *2). In cases of fibromyalgia, a diagnosis is often based upon a claimant's subjective complaints because "there are no laboratory tests to confirm the diagnosis." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). In fact, the Ninth Circuit has embraced the view that "[f]ibromyalgia is diagnosed 'entirely on the basis of patients' reports of pain and other symptoms.'" *Revels*, 874 F.3d at 663 (quoting *Benecke*, 379 F.3d at 590). Because fibromyalgia diagnoses are often based on subjective

reports of a patient's symptoms, SSR 12-2p provides a method for the SSA to evaluate fibromyalgia based upon treatment records. According to that ruling, a claimant may establish fibromyalgia "by providing evidence from an acceptable medical source." SSR 12-2p, 2012 WL 3104869 (July 25, 2012). While an ALJ may not "rely upon the physician's diagnosis alone" and must "review the physician's treatment notes to see if they are consistent with the diagnosis," there are certain criteria in medical records that give weight to a physician's opinion that a claimant has fibromyalgia. *Id.* According to the ruling, an ALJ "may find that a person has [fibromyalgia] if he or she has all three of the following criteria: (1) A history of widespread pain . . .; (2) At least 11 positive tender points on physical examination . . .; and 3) Evidence that other disorders that could cause the symptoms or signs were excluded." *Id.* Alternatively, a claimant can establish that she suffers from fibromyalgia by providing evidence of "repeated manifestations of six or more [fibromyalgia] conditions," especially "fatigue, cognitive or memory problems ('fibro fog'), walking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome." *Id.*

Dr. Bhalla's diagnosis satisfies the SSA requirements for establishing fibromyalgia as a medically determinable impairment. To establish a medically determinable impairment, a claimant must provide evidence from a medically acceptable source, such as laboratory results or a licensed physician. 20 C.F.R. § 404.1513(a); *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). Plaintiff did. Further, Plaintiff's diagnosis is relevant to her current claim even though it was made in 2001 because it shows a worsening of an impairment that existed prior to the expiration of Plaintiff's DLI. *See Smith*, 849 F.2d at 1225–26 (citing *Branham v. Heckler*, 775 F.2d 1271 (4th Cir. 1985) ("[A] diagnosis even several years after the actual onset of the impairment is entitled to significant weight.")).

ALJ Bucci did not discuss whether Plaintiff satisfied the SSA's tests for determining whether fibromyalgia is a medically determinable impairment. Instead, ALJ Bucci concluded that she was precluded from evaluating Plaintiff's fibromyalgia because ALJ Robins already analyzed Plaintiff's diagnosis and concluded fibromyalgia was not a medically determinable impairment. (R. at 1449.) It was impossible for ALJ Robins to

analyze Plaintiff's fibromyalgia diagnosis in 2000 when the diagnosis was not made until 2001. This diagnosis is the type of new and material evidence that would permit ALJ Bucci to reevaluate whether Plaintiff's fibromyalgia is a medically determinable impairment. Plaintiff is also aided by the slow pace at which her claim is proceeding through the judicial system, and thereby benefits from the new SSA rulings and regulations regarding fibromyalgia.

In sum, ALJ Bucci erred by failing to consider Plaintiff's new evidence of fibromyalgia and the relevant SSA rulings and regulations.

### 2. Plaintiff's vertebrogenic disorder is a medically determinable impairment.

Plaintiff argues that ALJ Bucci erred by finding that Plaintiff's vertebrogenic disorder was not a medically determinable impairment. (Pl. Br. at 10–12.) At step two, ALJ Bucci determined that Plaintiff failed to produce "laboratory or clinical findings or medical observations" to support a diagnosis or treatment of vertebrogenic disorder. (R. at 1449.) In her Opening Brief, Plaintiff points to several medical records to prove that she suffered from and was treated for back pain, leg numbness, lumbar stenosis, lumbar radiculopathy, herniated nucleus pulposus, and compression deformity. (Pl. Br. at 10–12.) Defendant argues that ALJ Bucci was correct in finding that vertebrogenic disorder was not a medically determinable impairment because Plaintiff failed to provide evidence that she was diagnosed or treated for it. (Def. Br. at 13.)

A claimant must provide objective medical evidence to establish a medically determinable impairment. 20 C.F.R. § 404.1513(a)(1). While some of Plaintiff's evidence regarding her vertebrogenic disorder is subjective symptom testimony, she also provides objective medical evidence regarding her back impairments as required by the SSA regulations. In May 1989, Dr. Volker K. Sonntag reported that Plaintiff was suffering from a "[l]arge herniated disc at the L3-4 level with narrowing of the spinal defect" that was confirmed by X-rays, CT scans, and an MRI. (R. at 2549, 2559.) Dr. Sonntag subsequently diagnosed Plaintiff with lumbar stenosis, lumbar radiculopathy, herniated nucleus

pulposus, and obesity. (R. at 2425.) In October 1992, Dr. Ernest A. Stewart recorded that Plaintiff suffered from a "[c]ompression deformity involving the lumbar vertebra." (R. at 2421.) In May 1993, Plaintiff was diagnosed with chronic pain syndrome and failed surgical back syndrome. (R. at 2361.)

ALJ Bucci's only stated reason for finding that Plaintiff's vertebrogenic disorder is not a medically determinable impairment is because Plaintiff failed to produce objective medical evidence to support a diagnosis of that specific disorder. (R. at 1449.) However, this finding is neither persuasive nor supported by substantial evidence. Plaintiff has furnished evidence to show she was experiencing ongoing back pain prior to her DLI. While the ALJ is correct that the term "vertebrogenic" does not appear in Plaintiff's medical records, there is objective evidence of a vertebrogenic disorder.

The SSA Listing of Impairments does not bear directly on the ALJ's step two finding, but its evolution provides some insight on the definition of a "vertebrogenic disorder." During the 1980s, the Listing of Impairments specifically identified arthritis, osteoporosis, and "other vertebrogenic disorders." *See Sprague v. Bowen*, 812 F.2d 1226 n. 1 (9th Cir. 1987). The Listing has since been revised and includes more detailed descriptions for what may be considered "disorders of the spine." 20 CFR Part 404, Subpart P, Appendix 1. Based on the objective medical evidence that Plaintiff provided regarding her back pain, it appears that her doctors did not characterize her impairments broadly as "vertebrogenic disorder" but instead opted for specific diagnoses, some of which appear in the current Listing of Impairments.

With regard to Plaintiff's alleged back pain during the period of disability, ALJ Bucci found that Plaintiff's "minimal and infrequent treatment for this condition following her 1989 surgery . . . is inconsistent with a severe and disabling impairment." (R. at 1450.) However, Plaintiff was not required to prove that her back pain amounted to a severe and disabling impairment. Rather, to even get to the severity step, Plaintiff was only required

to offer objective medical evidence that her back pain amounted to a medically determinable impairment.[6]

The ALJ erred in finding that Plaintiff's vertebrogenic disorder was not a medically determinable impairment. Contrary to Defendant's argument, the ALJ's error was not harmless because in assessing a claimant's residual function capacity, the SSA considers all medically determinable impairments—severe and non-severe. 20 C.F.R. § 404.1545(a)(2). Therefore, the ALJ should have moved to steps three through five looking at all of Plaintiff's impairments, including vertebrogenic disorder.

### C. The credit-as-true rule does not apply.

Plaintiff asks that the Court apply the "credit-as-true" rule, which would result in remand of Plaintiff's case for payment of benefits rather than for further proceedings. (Pl. Br. at 17.) The credit-as-true rule only applies in cases where three elements are present. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099–1102 (9th Cir. 2014). First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence. *Id.* at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id.* at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id.* Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id.* (citations omitted).

In this case, the ordinary remand rule applies. The evidence shows that Plaintiff suffers from impairments that are considered severe within the meaning of the Act and its regulations. However, because the ALJ ended the inquiry at step two, the record is underdeveloped with respect to Plaintiff's ability (or inability) to sustain work in the

---

[6] The Court notes that the standard for establishing a medically determinable impairment is lower than what is required to prove a severe impairment.

- 13 -

national economy. Accordingly, the Court remands to the ALJ to properly complete an assessment at steps three through five, considering all evidence related to Plaintiff's hypertension, headaches, obesity, depression, anxiety, fibromyalgia, and vertebrogenic disorder.

**IT IS THEREFORE ORDERED** reversing the decision of the Administrative Law Judge (R. at 1441–55) as upheld by the Appeals Council (R. at 1433–40). The Court remands this matter for further proceedings consistent with this Order, including the ALJ's proper consideration of Plaintiff's impairments in the disability analysis. On remand, the ALJ must find that Plaintiff's obesity, depression, and anxiety are severe impairments and that Plaintiff's hypertension, headaches, fibromyalgia, and vertebrogenic disorder are, at least, medically determinable impairments.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this matter.

Dated this 28th day of October, 2019.

Honorable John J. Tuchi
United States District Judge